# DELOUGHREY, RESPONDENT, *v.* HINDS, TREASURER, ET AL., APPELLANTS.

[No. 1,449.]

[Submitted October 5, 1899. Decided October 23, 1899.]

*Taxation — Assessment — Board of Equalization — Equity — Pleading — Injunction — Stare Decisis.*

1. Under Laws of 1889, page 219, Section 4, which makes it the duty of a taxpayer to furnish the assessor a list of all his property, and Section 5, requiring the assessor to value each lot separately, and Laws of 1887, page 82, Section 22, which provides that any person feeling aggrieved by any assessment may apply to the board of equalization for the correction thereof, equity will not enjoin the sale of separate lots as-

sessed in gross, for the collection of the taxes thereon, where the complaint does not show that he attempted to have the irregularity corrected by application to the board, or some excuse for not doing so.

2. In an action to restrain by injunction the collection of a tax alleged to have been irregularly and illegally assessed, a complaint which fails to show that plaintiff attempted to have the irregularity complained of corrected by application to the board of eqalization, and does not allege any excuse for not doing so, is bad on demurrer..

3. A court of equity will not grant relief to a taxpayer when the only ground alleged to invoke its aid is an irregularity in the assessment.

4. Under Laws of 1889, page 219, Section 4, which makes it the duty of a taxpayer to furnish the assessor a list of property owned by him, and Section 5, which makes it the duty of the assessor to assess each lot separately, where the complaint, in an action to enjoin the sale for taxes of one of several separate lots assessed in gross, alleges that complainant is the owner of the lot, but fails to show whether or not the complainant owned all of them at the time the assessment was made, and does not attack the assessment on any ground other than such assessment in gross, it will be presumed that he was either the owner of the several lots when the assessment was made, or that he purchased the lot since the assessment. In the former case he is not entitled to relief, as it is his duty to pay taxes on all the lots; and in the latter he cannot complain, as he took subject to the burdens.

5. In an action to restrain by injunction the collection of a tax alleged to have been irregularly assessed, a complaint which alleges that plaintiff "is" the owner of the lot in question, but fails to make tender of the amount of taxes admittedly just and due to the county and state, is bad on demurrer.

6. The rule of *stare decisis* will be observed where it is apparent that no substantial injury or injustice will result therefrom.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

ACTION by Patrick Deloughrey against Thomas R. Hinds, as county treasurer, and the county of Silver Bow. From a judgment overruling a demurrer to the complaint, defendants appealed. Reversed.

*Mr. C. B. Nolan, Mr. C. P. Connolly,* and *Mr. R. L. Clinton,* for Appellants.

*Mr. C. D. Tillinghast,* for Respondent.

Section 1696 of the General Laws of Montana for the year 1887, relating to Revenue, requires that each town or city lot be valued and assessed separately, except when one or more adjoining lots are returned by the same person. Separate and distinct parcels of real estate are to be considered as distinct subjects of taxation and must be separately valued and assessed. The rule applies to lots and blocks in cities and towns, and failure to observe this requirement will render an

assessment void. (*Powder River C. Co.* v. *Commissioners*, 45 Fed. 327; Am. and Eng. Enc. Law, Vol. 25, pp. 222 and 223 and Note 3, p. 223; *Calwallader* v. *Nash*, 73 Cal. 43.)

A radical defect in an assessment is such a nullity that it cannot be cured by prescription. (*People* v. *Holliday*, 25 Cal. 300.)

Lot 7, Block 18, the tax sale of which is sought to be restrained, is at least a full block distant from the other lots with which it was jointly assessed and taxed. It is claimed by the respondent that such assessment was not merely irregular but wholly void, being in palpable violation of the statute cited above, covering assessments at that time.

Where the law requires a separate assessment of lots, the requirement is held mandatory by the courts of nearly all the states under the general principle that whatever is required for the protection of the tax-payer is mandatory. (*Powder River C. Co.* v. *Com.*, 45 Fed. 327; Am. and Eng. Enc. Law, Vol. 25, pp. 76 and 77 and Note 1, p. 78; also p. 222, Note 4 and cases there cited; also pp. 299 and 300; Black on Tax Titles, Secs. 198 and 199 and cases there cited; *Life Association* v. *Assessors*, 49 Mo. 512; *Silsbee* v. *Stockle*, 44 Mich. 567; *Chicago Railway Co.* v. *Davenport*, 51 Iowa 454; *Marsh* v. *Clarke County*, 42 Wis. 502; *Hamilton* v. *Fon du Lac*, 25 Wis. 490; *Hewes* v. *Reis*, 40 Cal. 255; *People* v. *Hollister*, 47 Cal. 408; *Ruby* v. *Huntsman*, 32 Mo. 501.)

The distinction between void and irregular assessments was clearly made by this Court in *Casey* v. *Wright*, 14 Mont. 315. In that case the complaint did not set out the fact of the joint assessment of several distinct lots or parcels, and the opinion of the Court, so far as it discusses the complaint, takes for granted that the assessment was irregular and not void. But the answer in that case discloses the fact that the assessment of several lots or parcels was made as one assessment at a single valuation for all of the parcels so jointly assessed, which is the fact in this case, and the Court holds that a sale under such an assessment would be void and ought to be restrained, and that being a sale under circumstances iden-

tical with those set out in the complaint in this action, would be a void sale and hence restrained. In *Casey* v. *Wright*, the plaintiff owned lots 1, 2 and 3, block 81, and claimed the assessment invalid for the reason that the lots were assessed in gross and not separately. It also appears that said three lots and eight other lots in different blocks were sold in gross for the total tax on all of said lots. In this case we only have to do with the gross assessment. From the numbering of the lots (1, 2 and 3) it is presumed that the three lots adjoined each other and that they belonged to the same owner, and hence the assessment of those three lots was not in violation of the statute. It appears from the record in that case that the three lots were assessed separately from the other lots. Hence, it could be easily ascertained what proportion of the whole tax should be charged against the three lots of the plaintiff. This case is distinguished from *Casey* v. *Wright* in this:

1.   In that case the lots assessed in gross were contiguous; in this case lots not contiguous were assessed in gross.

2.   Plaintiff's lot in this case being assessed in gross with other lots not contiguous, was in direct violation of the statutes; whereas, in *Casey* v. *Wright* the assessment of the three lots was lawful.

3.   The plaintiff in this case had no means of ascertaining what proportion of the whole tax should be charged against his lot, because there was one assessment in gross of all the lots. In *Casey* v. *Wright* the plaintiff's three lots were assessed separately from the other lots, and hence, the amount charged against those three lots could be easily ascertained.

The defendant's demurrer to the complaint in *Casey* v. *Wright* was sustained for the reason that, while the assessment was irregular, the amount of taxes chargeable to the plaintiff's three lots could be easily ascertained, and hence, should have been tendered. In *Casey* v. *Wright* the assessment was merely irregular; in this case the assessment was void, and there is no method by which the amount justly chargeable to plaintiff's lot could be ascertained, and for that

reason no tender was required. It is not contended by respondent that the rule in *Casey* v. *Wright* is erroneous, but the facts of this case radically differ from those of that case, so as to take this case out of the rule laid down in *Casey* v. *Wright.*

It will be observed that the case there cited (18 Cal. 149), being an assessment like the one in the case at bar, was held void, and this Court there held that the authorities are almost uniform that such a sale (and assessment) is void, and clearly holds that case identical with the case at bar in the latter part of the language above quoted. In *Silsbee* v. *Stockle*, 44 Mich. 561, it was held that the statutory provision that no sale for delinquent taxes shall be held invalid unless it be made to appear that all legal taxes were paid or tendered, is unconstitutional so far as it sustains sales for taxes which are in part illegal. Also, it is a presumption of law that the land demanded for a delinquent tax bears some proportion to the sum to be paid, and that if the tax is in part illegal, some portion of the land sold to pay it is taken to satisfy an illegal demand.

In *Raynor* v. *Lee*, 20 Mich. 384, it was held that a provision of law which requires that resident and non-resident real estate should be separately assessed, must be observed, or the assessment will be invalid, and a sale for such tax will convey no title.

In *Hewis* v. *Reis*, 40 Cal. 255, it was held that, where the statute requires a series of acts to be performed before the owners of the property are properly chargeable with the tax, such acts are conditions precedent to the exercise of the power to levy the tax, and all the requirements of the statute must be complied with or the tax cannot be collected.

In *People* v. *Hollister*, 47 Cal. 408, it was held that, when several parcels of land are assessed to the same person, they must be separately valued. In *Cadwallader* v. *Nash*, 73 Cal. 43, it was held that town lots must be separately listed and valued for assessment, and an assessment of several lots as one undivided parcel is void. This latter case is under a statute practically identical with the statute of this state.

The objection to the complaint in this case for the reason that no tender has been made, is not well taken, as fully appears by the foregoing.

*Marsh et al.* v. *Supervisors of Clark County*, 42 Wis. 502, was an action to restrain the county treasurer from issuing a tax deed where there was an illegal assessment. The statutes of Wisconsin require that lands shall be assessed from actual view. The assessors did not assess the land in question from actual view, the same consisting of a large tract of timber lands, some of which were broken and bluffy and of no value, except for timber, while other portions were level and fertile and valuable for agricultural purposes. The court held the assessment void.

If the tax is void, plaintiff is under no obligations to tender anything. (Cooley on Taxation, p. 764, note 1; *Powder River C. Co.* v. *Com.*, 45 Fed. 328, 329.)

Under the statute in force at the time the assessment complained of was made, the powers of the board of equalization were limited to the supplying of omissions, correcting clerical errors, and increasing or diminishing any assessment or valuation. The board of review only have power to increase or lower individual assessments and to correct clerical errors. (*S. V. W. W. Co.* v. *Schottler*, 62 Cal. 69; also *People* v. *Supervisors*, 40 Cal. 613.) Nor is there anything to the contrary in *First National Bank* v. *Bailey*, 15 Mont. p. 308, cited by appellants.

The assessment being void, and not merely irregular, could not be cured by the board of review, and hence no application to such board was necessary. (*Powder River C. Co.* v. *Com.*, 45 Fed. 327; Am. and Eng. Enc. Law, Vol. 25, p. 204, note 5, also pp. 222, 223, and note 5; also *Marsh* v. *Clarke County*, 42 Wis. 402; also *San Luis Obispo* v. *Pettit*, 87 Cal. 499.)

The case at bar is distinguished from *N. P. Ry. Co.* v. *Patterson*, 10 Mont. p. 106, cited by appellants, in which relief was sought from a tax claimed to be excessive, and which was clearly within the powers of the board of review, and hence the complaint in that action, which failed to allege any appli-

cation to the board of review, or of a tender of the correct or proper portion of the tax, was clearly defective. In this case, one wishing to relieve the lot in suit from the lien of the tax could not by any possible means estimate the amount properly chargeable to that lot. It follows, that the board of equalization having no jurisdiction in such case, it was unnecessary to go before such board, because they would have no power to give life to a void assessment.

In *N. P. Ry. Co.* v. *Patterson*, the assessment was irregular, not void, and the question to be determined was, whether the court would interfere to diminish the assessment when the plaintiff had not applied to the board of review to obtain such relief. In that case it was conceded that part of the assessment was valid; in this case, it was wholly void.

Section 3915 of the Political Code of Montana provided that if the treasurer discovers before sale that on account of irregular assessment the land ought not to be sold, he must not offer it for sale, and herein lies the secret of the failure of the defendant county to offer this property for sale during all of the years intervening between the assessment and the present year. If the section last cited debars the treasurer from selling when an irregularity is discovered, how much more when the assessment is void.

We think it follows, the statute being mandatory, that the sale must be restrained. The remedy by injunction against an illegal and void tax is the proper one. (38 N. E. 600; *Reilly* v. *Telegraph Co.*, 47 Ind. 511; *Shoemaker* v. *Board*, 36 Ind. 175; *Williamsport* v. *Kent*, 14 Ind. 306; *Miles* v. *Ray*, 100 Ind. 166; *Knight* v. *Turnpike Co.*, 45 Ind. 134; Cooley on Taxation, pp. 746, 747, 773; *Hobbs* v. *Tipton Co.*, 103 Ind. 575.) The owner of real estate may by injunction prevent a cloud being cast on his title. (*Thomas* v. *Simmons*, 103 Ind. 538; *Bishop* v. *Morronan*, 98 Ind. 1; *Petry* v. *Ambrosher*, 100 Ind. 510.) Where a tax is a lien, equity will interfere and remove the cloud upon the title. (Cooley on Taxation, pp. 746, 747, 761; *Schulenberg-Boecker Lbr. Co.* v. *Town of Hayward*, 20 Fed. 422; *Albany City Bank* v. *Maher*, 9 Fed. 884; *N. P. Ry. Co.* v. *Galvin*, 85 Fed. 811.)

PER CURIAM.—This is an action by the plaintiff, Patrick Deloughrey, for an injunction to restrain the defendant, Thomas R. Hinds, as treasurer of Silver Bow county, and his successors, from selling certain property situated in the city of Butte, in said county, for city and county taxes assessed and levied for the year 1890.    After alleging the official character of the defendant, the plaintiff avers substantially that he is the owner of lot No. 7 of block No. 18 of the original townsite of Butte, as it appears on the official plat of the city on file with the recorder of Silver Bow county; that in the year 1890 the duly elected, qualified, and acting assessor of the county of Silver Bow made an assessment upon the property above described, together with the south half of lots 6, 7, and 8 of block No. 8 of the original townsite of Butte, including all as one parcel, and putting a gross valuation upon the whole of $3,550; that the total county tax charged against all of said lots under said assessment was the sum of $49.70; that the city tax for that year levied and assessed upon the said lots, in the same manner, was the sum of $180.18; that the said assessment was and is fraudulent, illegal, and void, for the reason that the said property of this plaintiff above described then consisted of a town or city lot which did not and does not adjoin the other lots above described, but was and is separate, distinct, and apart from the other said lots; that for this reason it was impossible for the plaintiff, who is now the owner of the said lot No. 7 aforesaid, to "remove the said taxes from being a cloud to his said property by payment of the said taxes thereon"; that, pursuant to such illegal, fraudulent, and wrongful assessment, the sum of $229.88, alleged taxes, is illegally, fraudulently, and wrongfully charged against this plaintiff and his "said premises" for the said year 1890; that this plaintiff has no adequate remedy at law "for the purpose of removing the cloud upon the title to his said premises"; that the alleged taxes now appear spread upon the tax roll of the county of Silver Bow for the year 1890, and are apparently legal and valid, and are upon the face thereof a lien upon the said property of this plaintiff

and a cloud upon his title thereto; and that the said Thomas R. Hinds, as treasurer aforesaid, threatening to take proceedings to enforce the collection of said taxes so illegally, fraudulently, and wrongfully assessed and levied, has advertised the same for sale, and intends to expose said property of the plaintiff for sale, at public tax sale, and to sell the same, for the purpose of collecting the whole sum of said taxes, thereby casting a further cloud upon the plaintiff's title to his said property, to his (the plaintiff's) great and irreparable injury and damage. From a plat attached to the complaint, it appears that lot 7 is about one block distant from the other lots mentioned.

To this complaint the defendants interposed a general demurrer. After a hearing upon the demurrer, the district court overruled it, and, counsel for defendants electing to stand on the demurrer, the court ordered judgment in favor of the plaintiff that a perpetual injunction issue restraining defendant Hinds and his successors from proceeding with the sale. From this judgment defendants have appealed.

The defendants insist that the complaint is not sufficient to sustain the judgment of the district court, because its allegations are defective in two particulars, to wit:

1. That it fails to allege a tender of any part of the taxes due for the year 1890; and,

2. That no relief was seasonably sought from the board of county commissioners of Silver Bow county, sitting as a board of equalization, for the purpose of correcting the assessment.

The assessment was made under the provisions of the Laws of the 15th Extra Session of 1887 (page 82), as amended by the Laws of 1889, 16th Session (page 219). Under amended section 14 of this act (section 4, Act of 1889), it was the duty of the taxpayer, upon demand by the assessor, to make out a statement under oath containing a list of all his property, for the purpose of taxation. Under amended section 15 (section 5, Act of 1889), it was the duty of the assessor thereupon to determine and fix the true value of all items of property in-

cluded in such statement, and to enter the same opposite each item, so that, when completed, such statement should truly and distinctly show "the number of town or city lots, giving the description and the value thereof." Section 22 provided that upon the completion of the roll by the assessor, and on the third Monday of September, and from day to day thereafter, the board of commissioners of the county should sit as a board of equalization, "and any person feeling aggrieved by any valuation or amount of property listed, or by any other fact appearing on such assessment, may apply to such board for the correction thereof." The board was authorized thereupon to make such correction.

Questions arising out of assessments made under the provisions of this statute have been before this court in several cases, and we are of the opinion that the precise one involved in this case has been settled adversely to the plaintiff. In *Northern Pac. Railroad Co.* v. *Patterson*, 10 Mont. 93, 24 Pac. 704, an injunction was sought to restrain a sale of lands for taxes delinquent for the year of 1889. A part of the lands was alleged to be exempt from taxation under the laws of the territory of Montana, and as to the other lands—which were town lots—the allegation was that the assessment was void, because the valuation made thereon was in gross, and not in conformity with the provisions of the statute. This court held, after an examination of the adjudicated cases, that the complaint was bad, in that it failed to allege a tender of the taxes delinquent upon that part of the lands not exempt, this amount being apparent from the assessment, and also in that it failed to show that the plaintiff had applied to the board of equalization to correct the errors complained of. The question arose in that case on demurrer. The same question was again presented, with others, in *Ward et al.* v. *Board of Commissioners of Gallatin County*, 12 Mont. 23, 29 Pac. 658. The treasurer of Gallatin county had sold the lands of the plaintiff for taxes delinquent for the year 1889. These lands, owned in separate parcels, not adjoining, had been assessed and valued in a lump sum, together with certain personal

property.   The whole amount of the lands had been sold for the taxes due upon them, and also upon the personal property. The time for redemption having expired, the treasurer was about to issue his deed to the purchaser.   Suit was brought to set aside the sale and to enjoin the issuance of the deed. The complaint was by the lower court held bad on demurrer, and upon appeal to this court the judgment was affirmed. Chief Justice Blake, approving *Northern Pac. Railroad Co.* v. *Patterson, supra,* uses the following language:  "The principles which were laid down in *Northern Pac. Railroad Co.* v. *Patterson* are applicable, and the appellants could have obtained an adequate remedy on account of these irregularities by appearing before the board for the correction of the assessment roll."   And again, in another part of the opinion: "We cite again the case of *Ralroad Co.* v. *Patterson, supra,* and hold that the appellants cannot invoke the aid of an injunction, when they do not offer to do equity by tendering any part of the taxes which they owe to the county of Gallatin and the state."   We agree with the conclusion reached that a court of equity will not grant relief to a taxpayer when the only ground alleged to invoke its aid is an irregularity in the assessment.   In *Casey* v. *Wright,* 14 Mont. 315, 36 Pac. 191, the plaintiff sought to set aside a tax deed issued to the defendant by the treasurer of Custer County to lots 1, 2 and 3, block 81, of Miles City, and to have it removed as a cloud from his title.   The ground of complaint was that these lots had been assessed in gross, and that in making the sale the treasurer had sold them in gross with other lots.   This assessment had been made for the year 1888 under the act of 1887, *supra,* the provisions of which were substantially the same as those of the amended act.   The district court sustained a general demurrer to the complaint, and this court affirmed the judgment, citing, with approval, *Railroad Co.* v. *Patterson* and *Ward* v. *Commissioners, supra,* upon the ground that the plaintiff could not be heard to complain of an irregularity in the assessment so long as no tender of the taxes justly due had been made, and no showing was made of injustice or

injury to the plaintiff resulting from the assessment. In the subsequent case of *First National Bank* v. *Bailey*, 15 Mont. 301, 39 Pac. 83, the case of *Railroad Co.* v *Patterson, supra*, was again cited with approval upon the point that, where the plaintiff had failed to apply seasonably to the board of county commissioners for the correction of an irregularity in the assessment, he was not entitled to any relief from a court of equity. This case arose upon an assessment made under the provisions of section 6 of the act of 1891, substantially the same as the provisions of the act of 1887, cited *supra*. In the case under consideration the plaintiff does not avoid the consequences of the rule laid down in the cases cited. He fails to show that he attempted to have the irregularity complained of corrected by application to the tribunal provided by law for that purpose; nor does he allege any excuse for not doing so. This failure on his part is, in itself, sufficient ground for denying him the relief sought herein.

We think the complaint bad, also, on the ground that the plaintiff does not offer to pay taxes admittedly just and due to the county and state. He is adroit in attempting to evade the rule of the cases just cited by claiming that he has no way of determining the amount due upon lot 7 of block 18, because he cannot fix from the gross valuation of the lots the amount due thereon. It will be noted, however, that he alleges that he *is* the owner of this lot. He does not say whether he was also the owner at the time the assessment was made. Again, in another part of the complaint, he alleges ''that it is impossible for this plaintiff, who is *now* the owner of said lot, * * * to remove said taxes,'' etc. From this condition of the pleading we are left to make the inference (and we think it a fair one) either that he was the owner of all the lots assessed in gross in 1890, or that he has purchased the one in controversy since that time. Inasmuch as no complaint is made of the assessment other than that the valuation was made in gross, we presume that the return was properly made to the assessor by the owner under the provisions of section 14, *supra*, and that it was the assessor's fault that the valuation

was made as it was.   If the plaintiff was the owner of all the lots, and still is, he can easily know what it is incumbent upon him to pay, no matter what the irregularity of the assessment was.   As no complaint is made that the tax imposed is unlawful or unjust, except upon the ground that the assessment is irregular, it is clear that he should pay the whole amount of taxes assessed.   If he purchased from the owner after the assessment was made, and the burden was then upon the property, he cannot complain to this court that he has been wronged in any respect,—his remedy is against his grantor. To hold otherwise would be to say that the owner of the property could be excused from the performance of his duty by selling out his property to different purchasers, thus escaping liability himself, and clothing the purchasers with such equities that they can escape also.   Again, if we are to infer that the plaintiff owned the lots at the time of the levy, but has since sold all but the one in controversy, he is still at fault, because he should pay the full amount of taxes due upon all. In any event, he is not in position to claim, as he does, that he should be excused from tendering the amount of taxes due.

It is further urged by the defendants that the demurrer should have been sustained under the provisions of sections 4023–4026 of the Political Code, prohibiting the issuance of an injunction to restrain the collection of taxes except in unusual cases, and providing a remedy for cases where the tax is deemed to be unlawful.   As we have already concluded upon other grounds that the judgment cannot be sustained, we do not deem it necessary to enter into a discussion of these provisions.

Plaintiff insists that the conclusion reached by this court in the cases cited, that an assessment in gross is a mere irregularity, is not supported by the weight of authority.   We do not feel inclined to examine the authorities to determine the correctness of this claim.   These cases were decided after such examination, and the rule laid down by them has become so well established in this jurisdiction that we do not feel disposed to disturb it, it being apparent that no substantial in-

jury or injustice will result from observing the rule of *stare decisis.*

The judgment is reversed, and the cause is remanded to the district court, with directions to sustain the demurrer.

*Reversed and remanded.*